*883 RESOLUCION
En el asunto de epígrafe estamos llamados a ejercer nuestro poder reglamentario e interpretar varias disposiciones de las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B. En específico, debemos establecer quién es la parte promovente de un procedimiento disciplinario contra un miembro de la Judicatura cuando ese proceso fue promovido por un panel de jueces de apelaciones que elevó el asunto a la atención de este Tribunal Supremo, procediendo entonces el Juez Presidente a referirlo a la atención de la Oficina de Administración de los Tribunales (OAT).
Para atender esta controversia reglamentaria, además del derecho aplicable, debemos ser conscientes de la coyuntura histórica en la que se ha encontrado la Rama Judicial en los últimos meses. Además, debemos guiarnos por los postulados básicos que este Tribunal ha enfatizado en las últimas semanas, a saber, la misión de “fortalecer la confianza del Pueblo asegurando la transparencia de los procesos y de la información, y garantizando la participación ciudadana [...]”. In re Enmdas. Rs. Disciplina Judicial, 191 DPR 563 (2014).
Antes de adentrarnos a analizar el asunto de autos, pasemos a exponer los hechos que lo ocasionaron.(1)
I—I
El 2 de febrero de 2011 un panel de jueces del Tribunal de Apelaciones compuesto por el exjuez Carlos J. López Feliciano (en adelante peticionario), el juez Hon. Sixto Hernández Serrano y la jueza Hon. Olga Birriel Cardona (en ade *884 lante Jueces de Apelaciones) refirieron a este Tribunal Supremo una Resolución de Inhibición emitida por el entonces juez superior Hon. Carlos I. Candelaria Rosa (en adelante juez Candelaria Rosa). Los Jueces de Apelaciones refirieron la Resolución a la atención de este Foro ya que, a su entender, el juez Candelaria Rosa había violado los Cánones de Ética Judicial cuando emitió una Resolución en la que se refirió despectivamente hacia los Jueces de Apelaciones luego de que estos revocaran una determinación suya en el caso Pueblo v. Héctor Cordero Cruz, J SC2008G-0337.
Tras recibir la solicitud para investigar la conducta del juez Candelaria Rosa, el entonces Juez Presidente Señor Hernández Denton procedió a incluir en la agenda del Pleno de este Tribunal, llevada a cabo el 18 de febrero de 2011, la petición que promovieron los Jueces de Apelaciones. En esa reunión se acordó que, de acuerdo con lo solicitado por los Jueces de Apelaciones, el asunto debía referirse a la atención de la Directora Administrativa de los Tribunales para que se comenzara el procedimiento de investigación correspondiente. Así las cosas, el 22 de febrero de 2011 el entonces Juez Presidente Señor Hernández Denton envió una comunicación a la entonces Directora Administrativa de los Tribunales, Hon. Sonia I. Veléz Colón, remitiendo, en conformidad con las Reglas de Disciplina Judicial, el asunto a la OAT para que se iniciara una investigación a tenor de la solicitud de los Jueces de Apelaciones.(2)
Casi tres (3) años más tarde, el 15 de octubre de 2013, la División de Asuntos Legales de la OAT sometió un Informe de Investigación a la Directora Administrativa de los Tribunales.(3) En este, la División de Asuntos Legales concluyó que, aunque las acciones del juez Candelaria Rosa podían constituir violaciones a los Cánones de Ética Judi *885 cial, esta era la primera vez que este incurría en ese tipo de conducta y que se trató de una “actuación desacertada en el furor del momento”.(4) Por lo tanto, recomendó que se archivara la Queja presentada contra el juez Candelaria Rosa, pero apercibiéndole que no debía incurrir en esas actuaciones nuevamente.
El 20 de noviembre de 2013, la Directora Administrativa de los Tribunales cursó una comunicación al juez Candelaria Rosa en la que le notificó los resultados de la investigación realizada por la Oficina de Asuntos Legales y le expresó lo siguiente: “Confiamos en el uso cuidadoso y prudente en sus expresiones, particularmente cuando lo haga en documentos sujetos al escrutinio público cuya divulgación pudiera lacerar la imagen de la Rama Judicial”.(5) Es decir, la Directora obvió la recomendación de la Oficina de Asuntos Legales de la OAT y no apercibió al juez Candelaria Rosa de que no debía incurrir nuevamente en conducta como la que fue objeto de la Queja. Del expediente podemos constatar que en la carta que la Directora envió al juez Candelaria Rosa se indica que solo se le enviaría copia de la misma al entonces Juez Presidente Señor Hernández Denton.(6)
Posteriormente, el 11 de septiembre de 2014, el peticionario —quien, como mencionamos, formó parte del Panel de Jueces del Tribunal de Apelaciones que solicitó la investigación contra el juez Candelaria Rosa— le cursó una comuni *886 cación a la Jueza Presidenta Señora Fiol Matta. En esta le peticionó que le informara sobre los resultados de la Queja que se había presentado contra el juez Candelaria Rosa, ya que nunca le notificaron tales resultados.
Días más tarde, el 26 de septiembre de 2014, el peticionario envió otra misiva a la Jueza Presidenta Señora Fiol Matta, esta vez con copia a todos los demás miembros de este Tribunal. En esta comunicación el peticionario informó que aún no había recibido contestación alguna en cuanto al pedido que había realizado en su anterior carta. Además, comunicó que se había enterado por los medios de comunicación del archivo de la Queja presentada contra el juez Candelaria Rosa. El peticionario nuevamente informó que a él nunca se le notificaron los resultados de la investigación que solicitó contra el juez Candelaria Rosa. Por ende, el peticionario solicitó formalmente en su misiva que se reabriera la investigación de la referida Queja.
Una vez recibida la comunicación del peticionario, el 29 de septiembre de 2014 este Tribunal le ordenó a la Directora Administrativa de los Tribunales que, en un término de cinco (5) días, mostrara causa por la cual los resultados de la investigación de la Queja presentada contra el juez Candelaria Rosa no debían ser notificados a los Jueces de Apelaciones en conformidad con las Reglas de Disciplina Judicial. En el ínterin, el peticionario compareció a este Tribunal mediante un escrito titulado Moción Informativa y de Reconsideración, en la que informó que, a instancias de la Jueza Presidenta Señora Fiol Matta, la Oficina de Asuntos Legales de la OAT había “compartido” con él los resultados de la investigación de la Queja en controversia. Además, reiteró su pedido de que se reabriera la Queja contra el juez Candelaria Rosa o que este Tribunal proveyera cualquier remedio que entendiese necesario.
Posteriormente, el 6 de octubre de 2014 la Directora Administrativa de los Tribunales compareció ante este Tribu *887 nal mediante una Comparecencia Especial en Cumplimiento de Orden. En esta se informó lo siguiente:
La Directora Administrativa de los Tribunales no tiene objeción alguna a dicha notificación. A tales fines, traemos a la atención de este Honorable Tribunal que el 26 de septiembre de 2014, por instrucciones de la Jueza Presidenta, Hon. Liana Fiol Matta, le remitimos al licenciado López Feliciano y los Jueces de Apelaciones Hernández Serrano y Birriel Cardona, copia del informe de investigación y de la comunicación del 20 de noviembre de 2013 que fue suscrita por la Directora Administrativa en relación a este asunto.(7)
Contando con la comparecencia de la Directora Administrativa de los Tribunales, procedemos a atender el asunto reglamentario ante nos.
II
A. Es incuestionable que “el comportamiento de los miembros de la Judicatura constituye uno de los pilares en los que se cimienta el Sistema Judicial. Por ello, se exige una conducta intachable para que éstos sirvan de ejemplo y fomenten el respeto y la confianza del pueblo en el Sistema Judicial”. In re Cancio González, 190 DPR 290, 297 (2014). Cónsono con ese principio, la Sec. 11 del Art. V de la Constitución de Puerto Rico establece que los jueces de los tribunales inferiores a este Tribunal “podrán ser destituidos por el Tribunal Supremo por las causas y mediante el procedimiento que se disponga por ley”. LPRA, Tomo 1, ed. 2008, pág. 418. Además, la See. 7 del Art. V de la Constitución le confirió a este Foro el poder para adoptar las reglas para la administración de los Tribunales. íd., pág. 416. En conformidad con estas disposiciones constitucionales, promulgamos tanto los Cánones de Ética Judicial de Puerto Rico, 4 *888 LPRA Ap. IV-B, como las Reglas de Disciplina Judicial, supra.
Hemos afirmado que con este último cuerpo reglamentario “se aprobó un proceso disciplinario que garantiza a la ciudadanía y a la Judicatura la justa y pronta consideración de todo asunto presentado y el debido proceso de ley”. In re Cando González, supra, pág. 304.(8) Además, al ejercer nuestro poder de reglamentación y enmendar estas reglas recientemente, expresamos que este Tribunal no toleraría conducta antiética alguna de los miembros de la Judicatura puertorriqueña y que el principio de transparencia regiría los procedimientos disciplinarios contra estos. Véase In re Enmdas. Rs. Disciplina Judicial, supra.
En cuanto al inicio del procedimiento disciplinario contra miembros de la Judicatura, enfatizamos recientemente que “[de] acuerdo con las Reglas de Disciplina Judicial, el proceso disciplinario contra un juez se inicia con la presentación de una queja juramentada ante la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales”. In re Cancio González, supra, pág. 304.
En síntesis, de acuerdo con las Reglas de Disciplina Judicial, un proceso disciplinario puede comenzar de tres (3) maneras. La primera, establecida en la Regla 5(a), se da cuando cualquier persona interesada en que se investigue la conducta de un juez, presenta una Queja personalmente o por correo en alguna región judicial o en la Oficina de Asuntos Legales de la OAT. La Regla 5(b) establece los requisitos de forma que debe cumplir este tipo de quejas, aunque la propia regla establece que “[e]l incumplimiento con alguno de los requisitos [...] no debe causar necesariamente el archivo de la queja”. (Énfasis suprimido). In re Enmdas. Rs. Disciplina Judicial, supra, pág. 567.
*889 La segunda manera como puede generarse un procedimiento disciplinario contra un juez se establece en la Regla 5(c). Esta dispone que el Juez o la Jueza Presidenta de este Tribunal, un Juez Asociado o una Jueza Asociada de este Foro, o la Directora Administrativa de los Tribunales puede solicitar por escrito que se abra una investigación en cuanto a la conducta de un juez. Esa solicitud se considerará como una Queja y no tendrá que cumplir con los requisitos formales de la Regla 5(b), supra.
Finalmente, la tercera manera como se abre un procedimiento disciplinario ocurre de acuerdo con la recién enmendada Regla 3 de Disciplina Judicial, supra. En esta se estableció que “ [1] a Oficina de Asuntos Legales podrá investigar información confidencial o anónima que pueda dar lugar a la presentación de una queja”. (Énfasis suprimido). In re Enmdas. Rs. Disciplina Judicial, supra, pág. 566.
Una vez se activa el procedimiento disciplinario, las Reglas de Disciplina Judicial exigen que la Oficina de Asuntos Legales de la OAT lleve a cabo una investigación en cuanto a los hechos que generaron la Queja. Véase Regla 7(b). Cuando se concluya la investigación, esa Oficina rendirá un Informe a la Directora Administrativa de los Tribunales en la cual recomendará si se continúa con el procedimiento mediante una Querella que se someterá a la consideración de la Comisión de Disciplina Judicial o si, sencillamente, se archiva la Queja presentada. Id. En este último caso, las Reglas de Disciplina Judicial establecen unos requisitos de notificación tanto al juez investigado como a la parte promovente de la Queja.
Específicamente, y clave para la controversia reglamentaria de autos, la Regla 8(c) establece que “[s]i el informe no expone conducta que amerite acción disciplinaria, la Directora o el Director, dentro de [...] diez (10) días desde su recibo, desestimará la queja, ordenará su archivo y notificará dicha determinación a la jueza o al juez promovido y a la parte promovente”. (Énfasis suplido). 4 LPRAAp. IV-B.
*890 La notificación que exige la Regla 8(c) es de importancia cardinal, ya que con ella se activan unos derechos a los cuales es acreedora la parte promovente de una Queja disciplinaria. En cuanto a ello, la Regla 8(d) establece lo siguiente:
(d) La notificación a la parte promovente le informará de su derecho a solicitar reconsideración ante la Directora o el Director, dentro de los 10 días siguientes a la notificación de archivo, si no está conforme con la determinación de desestimar la queja. De no solicitar reconsideración, la determinación de la Directora o del Director será final. (Enfasis suplido). 4 LPRA Ap. XV-B.
En la controversia enmarcada en el asunto reglamentario de epígrafe, el peticionario y la Directora Administrativa de los Tribunales difieren en cuanto a la apreciación de esta regla y del significado de parte promovente en el contexto de las Reglas de Disciplina Judicial. Por un lado, el peticionario sostiene que él y sus excompañeros Jueces de Apelaciones son la partes promoventes de la Queja presentada contra el juez Candelaria Rosa. Al así serlo, sostiene que tienen derecho a que se les notifiquen —no meramente que se “compartan” con ellos— los resultados de la investigación de la Queja de acuerdo con las Regla 8(c) y (d) de Disciplina Judicial, supra. Con esa notificación se activa el derecho del peticionario a solicitar la reconsideración del archivo de la Queja que provee la Regla 8(d), cosa que no ocurre con un mero “compartir” de información. En efecto, según hemos visto, el peticionario ni siquiera se había enterado del archivo de la Queja contra el juez Candelaria Rosa hasta hace unos días. Ello a pesar de que la Regla 8(d) le exige a la Directora Administrativa de los Tribunales que informe textualmente a la parte promovente de su derecho a solicitar la reconsideración de la determinación de archivar una Queja.
Por otro lado, la Directora Administrativa de los Tribunales, aunque no objeta que se le notifique al peticionario, sostiene que en su momento no le notificó en cuanto al *891 archivo de la Queja ni a él ni a los Jueces de Apelaciones, ya que la parte promovente del proceso disciplinario lo fue el entonces Juez Presidente Señor Hernández Denton.(9)
Enmarcada la controversia, pasemos a discutir el significado que este Tribunal ha dado al término parte promovente en el contexto de algunos Reglamentos que hemos aprobado.
B. De entrada, las propias Reglas de Disciplina Judicial proveen una definición de parte promovente. La Regla 4(j) define ese término como “cualquier persona natural que presente una solicitud para que se investigue la conducta o capacidad de un juez o de una jueza”. (Énfasis suplido). 4 LPRA Ap. IV-B. Según esta definición, lo único necesario para ser considerado parte promovente es haber activado un proceso disciplinario contra un juez mediante una solicitud de investigación. Es importante enfatizar que en la definición de parte promovente que se codificó en las Reglas de Disciplina Judicial no se utilizó la frase “que presente una queja”, sino meramente que “presente una solicitud”.
Por otro lado, hace unos días tuvimos la oportunidad de definir el término parte promovente en el contexto del Reglamento de este Tribunal, el cual es germano a las Reglas de Disciplina Judicial pero que carece de una definición específica para ese término. En In re MMT, MITA, LST, 191 DPR 667 (2014), expusimos que el diccionario de la Real Academia Española define el verbo promover como “ ‘[ijniciar o impulsar una cosa o un proceso, procurando su logro’ ”. Id. pág. 673. De acuerdo con esta definición, resolvimos que en el contexto de los procesos disciplinarios contra abogados que se rigen por el Reglamento de este Tribunal, parte promovente “se refiere a aquella persona que ha impulsado la acción disciplinaria y que, a su vez, tiene conoci *892 miento personal y legitimación activa con relación a la queja”. íd., pág. 674.
Estas definiciones tienen su razón de ser. Primero, garantizan que el procedimiento disciplinario lo activarán las personas que tengan un interés particular y justificado en ver disciplinados, ya sea a un abogado o a un miembro de la Judicatura. En el caso de los jueces, y. según señalamos en In re MMT, MITA, LST, supra, ese interés particular incluso se convierte en una obligación, ya que el Canon 7 de Etica Judicial establece:
Cuando los hechos les consten personalmente, las juezas y los jueces promoverán y cooperarán con los procedimientos disciplinarios que procedan contra cualquier jueza, juez, abogada, abogado, funcionaría, funcionario, empleada o empleado de la Rama Judicial que actúe contrario a lo dispuesto en los cánones, en las normas administrativas, reglamentos y leyes vigentes. (Énfasis suplido). 4 LPRAAp. IV-B.
Segundo, los Reglamentos aspiran a que esa parte promovente participe activamente del proceso disciplinario, ya que le cobija una serie de derechos para alentarlo a continuar impulsando el procedimiento aim cuando en algunas etapas se proceda con el archivo de la Queja que activó. Es por ello que las Reglas de Disciplina Judicial otorgan a la parte promovente el derecho a solicitar reconsideraciones de decisiones de archivar Quejas e, incluso, le proveen la oportunidad de, en última instancia, solicitar la revisión al Pleno de este Tribunal.
A tenor de la definición del término parte promovente que proveen las Reglas de Disciplina Judicial y el precedente que hemos discutido, establecemos que en el ámbito del proceso disciplinario contra jueces, la parte promovente es aquella que activa e impulsa el procedimiento para que se investigue la conducta de un juez, independientemente del mecanismo que haya utilizado para ello.
Con estas definiciones presentes, pasemos a atender el reclamo presentado por el peticionario en el asunto de epígrafe.
*893 HH HH HH
En la controversia ante nuestra consideración, a tenor del deber que les impone el Canon 7 de Ética Judicial, supra, el peticionario y dos (2) Jueces de Apelaciones nos solicitaron que se investigara la conducta del juez Candelaria Rosa en el contexto del caso Pueblo v. Héctor Cordero Cruz, J SC2008G-0337. Luego de discutir el pedido con todo el Tribunal en Pleno, el entonces Juez Presidente refirió el asunto a la Directora Administrativa de los Tribunales quien, de acuerdo con las Reglas de Disciplina Judicial, solicitó a la Oficina de Asuntos Legales de la OAT que comenzara una investigación sobre los hechos.
Según discutido, y al cabo de dos (2) años y ocho (8) meses de comenzado el proceso disciplinario, la Directora Administrativa de los Tribunales notificó mediante carta al juez Candelaria Rosa que se había determinado archivar la Queja presentada en su contra. Del expediente podemos colegir que una copia de esa notificación solo se le envió al entonces Juez Presidente, ya que la Directora sostiene que él fue la parte promovente del proceso disciplinario contra el juez Candelaria Rosa y no los Jueces de Apelaciones que nos refirieron el asunto. De hecho, los Jueces de Apelaciones que solicitaron la investigación nunca se enteraron del resultado de esta hasta el mes pasado.
Tras analizar el expediente del asunto de referencia es forzoso concluir que la interpretación del término parte promovente dada por la Directora Administrativa de los Tribunales en la Queja presentada contra el juez Candelaria Rosa es errada. De una mera aplicación de la definición del término que proveen las Reglas de Disciplina Judicial es obvio que el peticionario y los Jueces de Apelaciones fueron las personas que solicitaron inicialmente y promovieron la investigación en cuanto a la conducta del juez Candelaria Rosa. El que no lo hayan hecho directamente en la OAT mediante una Queja formal es inmaterial para *894 determinar si estos eran las partes promoventes del procedimiento disciplinario. Sencillamente, resulta incuestionable el hecho de que el peticionario y los Jueces de Apelaciones fueron los que activaron e impulsaron la Queja contra el juez Candelaria Rosa. Resolver lo contrario sería estimular que los jueces presenten quejas directamente en la O AT en lugar de referir el asunto a este Tribunal Supremo.
Establecido el hecho de que el peticionario era parte promovente de esa Queja, resta resolver si este tenía derecho a ser notificado de los resultados de la investigación. Como vimos, la Regla 8(c) de Disciplina Judicial, supra, establece que la parte promovente de un proceso disciplinario tiene derecho a que se le notifique en cuanto al archivo de una Queja. Además, la Regla 8(d) le exige a la Directora Administrativa de los Tribunales que le aperciba textualmente a la parte promovente que tiene un término de diez (10) días para ejercer su derecho a solicitar la reconsideración en cuanto a la decisión de archivar.
Al determinar que el peticionario es parte promovente de la investigación llevada a cabo en cuanto a la conducta del juez Candelaria Rosa, es forzoso concluir que este tiene derecho a que se le notifiquen, en conformidad con las Reglas de Disciplina Judicial, los resultados de la investigación de la Queja y la decisión de archivarla. Esa notificación no se cumple con meramente “compartir” con el peticionario los documentos de la investigación. Según discutido, las Reglas de Disciplina Judicial exigen que se le curse una notificación formal al peticionario que le aperciba en cuanto a su derecho a solicitar la reconsideración sobre la decisión de archivar la Queja.
Una conclusión contraria a esta redundaría en promover un absoluto absurdo jurídico. Si se acepta que el entonces Juez Presidente Señor Hernández Denton era el único que tenía derecho a ser notificado en cuanto al archivo de la Queja contra el juez Candelaria Rosa, se convalidaría el lamentable escenario en que los jueces que activamente *895 promovieron la investigación disciplinaria quedarían a oscuras y nunca se enterarían del resultado de la acción que ellos mismos activaron.(10) Como vimos, a no ser por la solicitud del peticionario a la Jueza Presidenta Señora Fiol Matta el mes pasado, eso precisamente hubiera ocurrido en este caso. Por ello, la interpretación de la Directora Administrativa de los Tribunales convirtió en un teatro de lo absurdo el procedimiento disciplinario contra los miembros de la Judicatura.
Además, nótese que la finalidad de la notificación a la parte promovente es que esta se entere formalmente que tiene derecho a solicitar una reconsideración si no está de acuerdo con los resultados. ¿Cómo podría el peticionario ejercer ese derecho si nunca se entera de los resultados de la investigación? El peticionario ha demostrado un interés particular en esta situación, que vio tronchado ante una interpretación ilógica del término parte promovente por parte de la Directora Administrativa de los Tribunales.
Por otro lado, ¿de qué le sirve al interés público y a los principios que rigen los Cánones de Ética Judicial interpretar que el Juez Presidente o la Jueza Presidenta de este Tribunal es la única parte promovente de Quejas como las de autos —con derecho a notificación y a solicitar reconsideración— cuando los que conocen la situación que generó la investigación son los jueces que originalmente la solicitaron? Esto cobra más relevancia en la situación de epígrafe, ya que el entonces Juez Presidente optó por guardar silencio y no notificar ni al Pleno ni a los Jueces de Apelaciones promoventes. Nos parece que con la interpretación dada por la Directora al término parte promovente no solo se afectó la transparencia de los procedimientos disciplinarios contra *896 jueces, sino que se fomentó una imagen de que en la Rama Judicial se esconden los procedimientos disciplinarios contra jueces detrás de un pesado telón burocrático.
Por último, llamamos la atención a que aun si aceptáramos la posición de la Directora Administrativa de los Tribunales en cuanto a que en esta situación el entonces Juez Presidente Señor Hernández Denton era la única parte promovente, la notificación que esta hizo en cuanto al archivo de la Queja no cumplió con la R§gla 8(d) de Disciplina Judicial, supra. Como vimos, esa regla exige que se le aperciba a la parte promovente en cuanto a su derecho a solicitar la reconsideración. En los autos del asunto de epígrafe solo consta que la Directora envió copia al entonces Juez Presidente de la carta que dirigió al juez Candelaria Rosa, en la que le anunció el archivo de la Queja presentada en su contra. En ninguna parte de esa carta se le apercibió al Juez Presidente de su derecho a solicitar la reconsideración si no estaba de acuerdo con el archivo de la Queja. Por ende, aun bajo la teoría de la Directora Administrativa de los Tribunales, no se cumplieron los requisitos de notificación que establece la Regla 8(d) de Disciplina Judicial, supra. Además, nótese que la interpretación de la OAT en cuanto a que el Juez Presidente es la única parte promovente genera un estado jurídico anómalo. Como se sabe, la Directora Administrativa de los Tribunales es una subalterna del Juez Presidente que actúa a nombre de ese Juez. ¿Qué lógica tiene que el Juez Presidente —como parte promovente— solicite a la Directora la reconsideración del archivo de una Queja cuando, si esa funcionaría confirma el archivo, el propio Juez Presidente tendría derecho a solicitar revisión de esa decisión a él mismo o a un compañero de este Tribunal? Para todos los efectos, la interpretación de la Directora convierte en final su decisión de archivar la Queja. De hecho, si el licenciado López Feliciano no hubiera comparecido ante este Tribunal hace unas semanas, precisamente eso hubiera ocurrido.
*897 > HH
Ya determinado que el peticionario era la parte promovente de la Queja presentada en contra del juez Candelaria Rosa y que, por ende, tenía derecho a ser notificado formalmente de la decisión de archivarla, nos resta determinar entonces el remedio al que tiene derecho el peticionario de autos. En su comparecencia, el peticionario nos solicitó que, ya que nunca fue notificado en cuanto al archivo de la Queja, ordenemos la reapertura de esta. No obstante, ese proceder no es necesario, ya que la notificación no fue efectiva. Consecuentemente, el procedimiento contra el juez Candelaria Rosa no ha acabado. Es principio conocido que la notificación de cualquier proceso judicial o administrativo es parte esencial del debido proceso de ley que cobija a las partes, por lo que una notificación defectuosa ocasiona que no se activen los términos para solicitar las reconsideraciones o para recurrir en alzada a foros superiores. Véase, por ejemplo, IM Winner, Inc. v. Mun. de Guayanilla, 151 DPR 30 (2000).
Ante ese escenario, y a tenor con la Regla 8(c) y (d) de Disciplina Judicial, supra, se ordena a la Directora Administrativa de los Tribunales que notifique adecuada e inmediatamente los resultados de la Queja presentada contra el juez Candelaria Rosa y la decisión de archivarla al Ledo. Carlos J. López Feliciano y a los Jueces de Apelaciones, Hon. Sixto Hernández Serrano y Hon. Olga Birriel Cardona. El haber “compartido” esos resultados con estas personas no cumplió con los procedimientos claramente definidos en las Reglas de Disciplina Judicial.
La notificación que habrá de realizar la Directora Administrativa de los Tribunales deberá cumplir con el requisito de la referida Regla 8(d) de Disciplina Judicial y el de apercibirle textualmente a las partes promoventes de la Queja antes descrita su derecho a solicitar, dentro de diez (10) días, la reconsideración de la decisión de archivarla. Si nin *898 guna de las partes promoventes ejerce su derecho a solicitar la reconsideración, el archivo de la Queja contra el juez Candelaria Rosa será final.
Por el contrario, de acuerdo con la Regla 9 de Disciplina Judicial, 4 LPRAAp. XV-B, si alguna de las partes promoventes presenta una solicitud de reconsideración, la Directora Administrativa de los Tribunales contará con diez (10) días para atenderla y notificar su determinación a las partes promoventes que la hayan solicitado y al juez Candelaria Rosa. Véase Regla 9(a) de Disciplina Judicial. De estar en desacuerdo con la determinación de la Directora Administrativa, las partes promoventes podrán solicitar la revisión directamente a la Jueza Presidenta Señora Fiol Matta dentro de los diez (10) días siguientes a la notificación de la determinación de la Directora. Véase Regla 9(b) de Disciplina Judicial. De aún estar inconformes, las partes promoventes podrán presentar una solicitud de revisión ante este Tribunal Supremo dentro de los diez (10) días siguientes a la notificación de la determinación de la Jueza Presidenta. Véase In re Cando González, supra; Regla 9(c) de Disciplina Judicial.
V
Nuestro deber ineludible de garantizar la transparencia en los procedimientos ante la OAT no puede convertirse en un mero compromiso inerte. Se requieren actuaciones proactivas, diligentes y efectivas de todos los componentes de la Rama Judicial para salvaguardar la confianza del Pueblo de Puerto Rico en nuestro sistema de justicia. Interpretaciones reglamentarias ilógicas que atenten contra ese principio de transparencia o contra los propósitos que persiguen los Reglamentos y las normas de la Rama Judicial solo consiguen alejarnos del norte que nos hemos trazado como Institución.
Lamentablemente, en el asunto de epígrafe, la entonces *899 Directora Administrativa de los Tribunales optó por hacer una interpretación reglamentaria que terminó promoviendo la imagen que tanto hemos luchado por evitar. No hay que ser un erudito para concluir que algo anda muy mal en un sistema en el cual la parte que promueve un proceso disciplinario nunca se entera del resultado de la investigación iniciada al respecto. Esto es lo que ocurre cuando las Quejas contra los miembros de la Judicatura se dilucidan en cuartos oscuros. Incuestionablemente, como Rama Judicial debemos aspirar a una imagen mucho más transparente que esa.

Publíquese y notifíquese inmediatamente por correo electrónico, fax o teléfono y por la vía ordinaria.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada Señora Pabón Charneco emitió un voto particular de conformidad. El Juez Asociado Señor Rivera García emitió un voto particular de conformidad. La Jueza Presidenta Señora Fiol Matta emitió un voto particular disidente, al cual se unieron la Juez Asociada Señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez. La Juez Asociada Señora Rodríguez Rodríguez disintió y emitió la expresión siguiente:
La Juez Asociada Señora Rodríguez Rodríguez disiente por las razones expresadas en el voto particular disidente emitido por la Jueza Presidenta Señora Fiol Matta, al cual se une. Además, considera preocupante la campaña de descrédito y deslegitimación que poco a poco ha ido hilvanando una mayoría de este Tribunal en contra de la Oficina de Administración de Tribunales y sus funcionarios. Para reformar nuestras instituciones no es necesario destruirlas.
El Juez Asociado Señor Estrella Martínez no intervino. El Juez Asociado Señor Kolthoff Caraballo se inhibió.
GFdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

*900 Voto particular de conformidad emitido por la
Jueza Asociada Señora Pabón Charneco.
El padre fundador Alexander Hamilton expresó en el Federalista No. 78 que de las tres (3) ramas que componen el sistema republicano de gobierno, la Rama Judicial es la menos peligrosa. Hamilton consideraba que ello era así ya que esta Rama no tiene ni fuerza ni voluntad, sino meramente poder de juicio. En cierto sentido, este padre fundador nos aseguraba que no había nada que temerle a la Rama Judicial, ya que sus pronunciamientos siempre serían públicos y el Pueblo podría juzgar sus acciones libremente. Es decir, a diferencia de las otras ramas políticas, los tribunales tendrían que explicar sus decisiones, por lo cual sería muy difícil confeccionar un velo que cubriera las actuaciones de sus miembros.
Lo anterior se traduce a que el principio de total transparencia debe regir en todas las determinaciones de la Rama Judicial de Puerto Rico. Ello incuestionablemente incluye el ámbito administrativo, que por disposición constitucional, es compartido entre la Jueza Presidenta del Tribunal Supremo, la Oficina de Administración de los Tribunales (OAT) y el Pleno de este Tribunal. De particular importancia para la integridad de esta Rama es que no existan movidas administrativas extrañas y sospechosas que laceren la confianza del Pueblo en su Rama Judicial.
La Resolución que antecede es muestra de que, como mínimo, una Mayoría de los integrantes de este Tribunal Supremo será proactiva en llevar a cabo cualquier medida para garantizar que el principio de transparencia esté presente en todos los ámbitos de la Rama Judicial. Según ex-presé hace unas semanas, ante los acontecimientos de los últimos meses, nos toca a todos llevar a cabo medidas proactivas para garantizar la transparencia en las labores de la Rama Judicial. Por eso, estoy conforme con la Resolu *901 ción que antecede, en la que se corrige un desacertado, errático y altamente perjudicial proceder de la Oficina de Administración de los Tribunales y su anterior Directora Administrativa.
I
La situación involucrada en el asunto de referencia es insólita y sin precedentes. Según descrito en la Resolución de epígrafe, tres (3) jueces que descargaron la obligación que les imponen los Cánones de Ética Judicial quedaron totalmente a oscuras luego de que la entonces Directora Administrativa de los Tribunales no les notificara los resultados de una investigación de una Queja que ellos activaron. La Resolución que avala hoy el Tribunal discute correctamente el derecho aplicable, pero considero que son de vital importancia dos (2) aspectos de este asunto que me mueven a expresarme por separado.
A. Primero, las alegaciones contenidas en la Queja presentada por el Ledo. Carlos J. López Feliciano y dos (2) actuales jueces del Tribunal de Apelaciones son en extremo preocupantes. El peticionario y los dos (2) letrados de apelaciones cumplieron con el deber que les imponen los Cánones de Ética Judicial y refirieron al entonces Juez Presidente, Federico Hernández Denton, una Resolución que emitió el entonces Juez Superior Carlos I. Candelaria Rosa.
Las expresiones que ese letrado recogió en un documento público son en extremo serias. El letrado expresó lo siguiente:
Resulta alucinante como desde el edificio del Tribunal de Apelaciones, ubicado en la calle César González de San Juan, los Jueces miembros del panel apelativo que cubre el distante Centro Judicial de Ponce han podido aquilatar mejor, para disculpar, el comportamiento del Ledo. Pietri, a pesar de que en la Sentencia de Desacato se certifica haber visto dicho pro- *902 ceder directamente y haberlo descrito como un enfrentamiento al Tribunal [...]
Soy del criterio de que la Sentencia del Tribunal de Apelaciones trasluce que el panel actualmente designando a Ponce, tal vez sin saberlo, participa de una noción distorsionada de la función judicial que propone un paradigma de Juez pusilánime, que no se ajusta a nuestro sistema de justicia pues se aleja del ideal de equilibrio reflexivo contenido en la prudencia, que es' la virtud de umbral requerida a los jueces. En la Ética Nicomáquea Aristóteles ubica la justicia entre extremos del exceso y el defecto, así por ejemplo, indica que lo virtuoso entre la cobardía y la temeridad es la valentía. De igual forma, estoy convencido de que en la función judicial conviene alejarse de los extremos de la arbitrariedad y la pusilanimidad para llegar al justo medio de la prudencia.
No obstante, la Sentencia del Tribunal de Apelaciones se decanta por dicho modelo de pusilanimidad judicial, a lo mejor sin cobrar noticia de ello, aunque no por inadvertida deja de tener tal noción judicial el mismo efecto adverso. Lleva la razón Trías al decir que “[e]l Juez podrá o no preocuparse por los problemas de la teoría del derecho, pero, quiera o no, tendrá, consciente o inconscientemente, su propia filosofía jurídica que irremediablemente intervendrá en la emisión de sus fallos.” No cabe duda de que la conformidad del Tribunal de Apelaciones con la abierta desobediencia de una orden judicial irradia la noción castrada de Juez al que aquí se hace alusión. La posibilidad de que dicho Tribunal no haya advertido su propia teoría junto a las consecuencias de la misma corrobora también a Trías en cuanto a que “[e]l Juez sonámbulo camina por terreno minado.”
Resulta palmario que la ostensible sumisión del criterio judicial a la voluntad irrestricta de acatar o no órdenes judiciales conferida por la Sentencia del Tribunal de Apelaciones [...] mina la confianza pública en el sistema de justicia, que tiene como base fundamental la independencia judicial y el consecuente poder de dirigir el curso de los trabajos en una Sala de Justicia. Asimismo, la privación de autoridad que la Sentencia Revocatoria perpetra a este tribunal [...] para, entre otras cosas, ordenar su desempeño con alguna pretensión de acatamiento, podría tener el efecto de arrojar dudas sobre la imparcialidad del Tribunal en futuros casos de éste[.] (Énfasis suplido y escolios omitidos). Comparecencia especial en cumplimiento de orden, Anejo 3, págs. 2-2.
*903 Sin pasar juicio en cuanto a si estas expresiones violaron los Cánones de Etica Judicial, es evidente que él peticionario y los dos (2) jueces de apelaciones que iniciaron un proceso disciplinario contra el Juez Candelaria Rosa tenían un interés entendible en ver disciplinado a ese letrado. Incluso, como se discute en la Resolución que antecede, su puesto judicial les imponía una obligación ética de presentar la referida Queja.
Ante las expresiones vertidas por el juez Candelaria Rosa, me deja atónita el hecho de que el peticionario se enterara de la decisión de la entonces Directora Administrativa de los Tribunales de archivar la referida Queja a través de los medios de comunicación. No hay malabar ex-plicativo que sea suficiente para justificar ese proceder. Si el principio de transparencia significa algo, es que los que comienzan procesos disciplinarios contra miembros de la Judicatura no pueden quedar encerrados en cuartos oscuros y, por consiguiente, ajenos a lo que los funcionarios de la OAT realicen. Espero que una situación de esta naturaleza no se repita y aconsejo a toda aquella persona que haya sido víctima de este proceder administrativo por parte de la OAT a que active los mecanismos que entienda necesarios para hacer valer los derechos que le cobijan como parte promovente de procesos disciplinarios contra jueces.
B. Segundo, me parece bochornoso el efecto que tuvo en el ordenamiento constitucional la interpretación reglamentaria de la entonces Directora Administrativa de los Tribunales. Nótese que la Queja contra el Juez Candelaria Rosa se archivó en noviembre de 2013. Varios meses más tarde, ese letrado fue ascendido al Tribunal de Apelaciones y luego confirmado por el Senado de Puerto Rico. Es decir, el Juez Candelaria Rosa es hoy compañero de estrado de dos (2) de los jueces que promovieron una Queja en su *904 contra. Hasta hace unas semanas, estos jueces m siquiera se habían enterado del archivo de la Queja que iniciaron.
Debido a que la Directora Administrativa de los Tribunales no notificó el archivo de la Queja a las partes promoventes, el proceso constitucional de nominación y confirmación de jueces se vio afectado, ya que presumiblemente las ramas políticas del Gobierno no estaban al tanto de la situación disciplinaria a la que estuvo expuesto el juez Candelaria Rosa. Como mínimo, sabemos que el peticionario no se había enterado del archivo de la Queja cuando el Juez Candelaria Rosa fue nominado al Tribunal de Apelaciones. Con su nefasto proceder, la entonces Directora Administrativa de los Tribunales afectó las funciones tanto del Gobernador de Puerto Rico como de los miembros del Senado de Puerto Rico al descargar sus funciones constitucionales de nominación y confirmación de jueces en Puerto Rico. Por ello, resultaba imperativo que este Tribunal interviniera para corregir el lamentable proceder de la OAT.
II
Por todas estas razones estoy conforme con la Resolución que antecede. Ante este proceder, era imperativo que este Tribunal se expresara y dejara claro que la OAT no puede llevar a cabo interpretaciones reglamentarias que laceren el principio de transparencia y menoscaben la confianza del Pueblo en la Rama Judicial.
Si en realidad esta Rama es la menos peligrosa de las tres, como mínimo debemos garantizar que los procedimientos disciplinarios contra jueces no se diluciden en cuartos oscuros. Querer desviar la atención mediante argumentos burocráticos o con alegaciones de que se trata de lacerar los poderes de la Jueza Presidenta, es una negación del rol que debemos ejercer como el Tribunal de última jerarquía en Puerto Rico. Por mi parte, y ante el llamado *905 del Pueblo, continuaré promoviendo que se forjen nuevos caminos en la Rama Judicial y no meramente que atendamos las situaciones de los últimos meses con una mentalidad de “más de lo mismo”. Nuestra Rama, y nuestro Pueblo, merecen mucho más.
Voto particular de conformidad emitido por el
Juez Asociado Señor Rivera García.
Es mi firme convicción que este Tribunal tiene la imperiosa responsabilidad de resguardar y fortalecer la trasparencia en los procesos disciplinarios en pos de la sana administración de la justicia. Mediante la Resolución que hoy emite este Tribunal, volvemos a dar vida a esa transparencia protegiéndola de nieblas completamente innecesarias. Esta es una característica que ineludiblemente debe permear en todos los procesos disciplinarios que se ventilan en nuestro sistema judicial, independientemente de cómo y contra quién se haya iniciado dicho procedimiento. Meras interpretaciones lingüísticas desacertadas no pueden operar como un obstáculo que mine la consecución de ese diáfano objetivo.
No es necesario recapitular los hechos que dieron origen a esta controversia, ya que están correctamente reseñados en la opinión per curiam que precede, por lo que nos remitimos a los mismos. Sin embargo, entiendo pertinente hacer hincapié especial en lo que respecta al Canon 7 de Ética Judicial.(1) El deber que este precepto impone a todos los jueces y las juezas necesariamente redunda en lo que hoy estamos resolviendo, esto es, que el juez o la jueza que promueve un asunto disciplinario contra otro juez o jueza debe considerarse como parte promovente de dicho procedimiento. Por ello, es insoslayable que se le notifique *906 sobre los incidentes procesales acaecidos durante todo el trámite de la queja presentada.
H=i
Sabemos que los Cánones de Ética Judicial son normas mínimas de conducta que rigen a los miembros de la Judicatura con el propósito de que su comportamiento “sea ejemplar y fomente el respeto y la confianza del pueblo en el Sistema Judicial”. In re Claverol Siaca, 175 DPR 177, 188 (2009). Véase, también, In re Grau Acosta, 172 DPR 159 (2007). Hemos descrito que la exigibilidad de estas normas es autoimpuesta, ya que “su aceptación como marco normativo es consustancial a la aceptación del cargo”. In re Ramos Mercado, 170 DPR 363, 393 (2007). En otras palabras, son imperativas para todos los que vestimos una toga y tenemos la sensitiva responsabilidad de honrarla para hacer valer la justicia.
En nuestro poder inherente de reglamentar la Judicatura, hemos incluido como parte de esta normativa que los jueces y las juezas promuevan procesos disciplinarios contra otros compañeros y compañeras miembros de la Judicatura, miembros de la abogacía o funcionarios y funcionarías de la Rama judicial que actúen de manera antiética o contraria a la ley. Esto no es un asunto nuevo. Ya desde los Cánones de Ética Judicial de 1977 se había establecido en el Canon IV lo siguiente:
Los Jueces deben mantener las mejores relaciones y cooperar entre sí para lograr la más eficiente administración de la justicia. Su conducta debe enmarcarse en el respeto mutuo, la cordialidad y la colaboración profesional, sin que importen las diferencias en sus posiciones relativas dentro del sistema judicial. Se cuidarán de hacer críticas infundadas o innecesarias que tiendan a menospreciar el prestigio de sus compañeros Jueces. Velarán por que la conducta de éstos y éstas se ajuste a estos cánones tanto en su proceder personal como en el desempeño de las funciones judiciales. El Juez debe promover los procedimientos disciplinarios que procedan contra cualquier Juez o *907 abogado que actúe impropia o deshonrosamente, cuando así le conste personalmente. (Enfasis nuestro). 4 LPRA Ap. IV-A (ed. 1978).
Nótese que el lenguaje contenido en aquel entonces imponía a los jueces y a las juezas la obligación de promover estas acciones. Años después, este Tribunal adoptó los Cánones de Etica Judicial de 2005.(2) Al hacerlo, acogió nuevas normas que precisarían aún más los parámetros de la conducta ética.(3) Es importante puntualizar que en la citada Resolución reiteramos como ejemplo de estos parámetros el deber de los jueces y las juezas de promover este tipo de procedimientos disciplinarios.(4) En otras palabras, aunque ello estaba contenido en los anteriores cánones de 1977, al adoptar los nuevos cánones en 2005 impregnamos ese deber con mayor fuerza y energía. Por ello, se incorporó la última oración del anterior Canon IV en un precepto que atendería exclusivamente esa materia. De esta forma, el actual Canon 7 de Ética Judicial dispone en parte:
Cuando los hechos les consten personalmente, las juezas y los jueces promoverán y cooperarán con los procedimientos disciplinarios que procedan contra cualquier jueza, juez, abogada, abogado, funcionaría, funcionario, empleada o empleado de la Rama Judicial que actúe contrario a lo dispuesto en los cánones, en las normas administrativas, en los reglamentos y en las leyes vigentes. (Enfasis nuestro).(5)
*908 El lenguaje del anterior Canon IV, supra, que establecía el deber de promover procesos contra abogados que actuaran impropia o deshonrosamente, se sustituyó para especificar que se extendía a casos en que se actuara contrario a lo dispuesto en los cánones, en las normas administrativas, en los reglamentos y en las leyes vigentes. De manera que, según se redactó este Canon 7, supra, el deber que pesa sobre los hombros de los jueces y las juezas en cuanto a promover procesos disciplinarios resulta ser mucho más amplio y riguroso.
Por otro lado, los principios que recogían el anterior Canon IV de Ética Judicial de 1977, supra, se incorporaron en el actual Canon 6 (4 LPRAAp. IV-B), que regula lo concerniente a las relaciones y la cooperación entre las juezas y los jueces. Mencionamos esto porque es pertinente prestar atención a los comentarios que merecieron los nuevos Cánones 6 y 7, supra. Al respecto, expresamos lo que sigue:
El deber de mantener una actitud de cordialidad y respeto que impone el Canon 6 no excluye la obligación de velar por que la conducta ética de [los compañeros jueces y juezas] sea cónsona con estos cánones, tanto en sus actividades personales como en el desempeño de las funciones judiciales.
Por ello, este canon impone a los miembros de la Judicatura la obligación de promover procedimientos disciplinarios contra juezas, jueces, abogadas y abogados cuyas conductas sean contrarias y en violación de los cánones de ética judicial o profesional, y cuando la conducta en que incurran les conste personalmente, independientemente de que ello pudiera resultarles incómodo. (Enfasis nuestro).(6)
Como vemos, se enfatizó la importancia de promover este tipo de procedimientos disciplinarios al punto que se *909 recalca y se exige el cumplimiento con ese deber independientemente de que ello resulte incómodo. En In re Claverol Siaca, supra, pág. 191, reafirmamos que este Canon 7 “responde a que los jueces tienen la obligación no sólo de conformar su propia conducta a los más altos estándares éticos, sino de velar por que otros jueces, abogados y personal de la Rama Judicial cumplan con las normas de ética judicial y profesional”. En otras palabras, más que una facultad, es una exigencia que no debe ser abdicada por quienes nos regimos por estas normas éticas.
l-H
En este caso el asunto que se investigó respecto a la conducta del juez superior Carlos I. Candelaria Rosa (juez Candelaria Rosa) fue referido a este Tribunal por un panel de Jueces del Tribunal de Apelaciones. Luego de ello, el entonces Juez Presidente Señor Hernández Denton refirió el asunto a la Oficina de Administración de los Tribunales (OAT). Recordemos que la Regla 5(c) de Disciplina Judicial, 4 LPRAAp. XV-B, dispone:
El Juez Presidente o la Jueza Presidenta, un Juez Asociado o una Jueza Asociada, el Director o la Directora, podrá solicitar a iniciativa propia y por escrito, una investigación sobre la conducta o capacidad de un juez o una jueza. Dicha solicitud se considerará como una queja, sin que sea necesario cumplir con los requisitos formales del inciso (b) de esta regla.
Ahora bien, ¿impide el lenguaje de esa regla que el panel de jueces de apelaciones que refirió el asunto que se iba a investigar sea considerado como la parte promovente de la queja de este caso? La construcción semántica de las palabras, la lógica de los procedimientos disciplinarios y los postulados del Canon 7, supra, nos llevan a contestar negativamente.
Como mencionamos recientemente en In re MMT, MITA, LST, 191 DPR 667 (2014), promover implica impulsar una *910 cosa o un proceso, procurando su logro. Por su parte, la Regla 4(j) de Disciplina Judicial, 4 LPRA Ap. XV-B, define el término parte promovente como “[c]ualquier persona natural que presente una solicitud para que se investigue la conducta o capacidad de un juez o de una jueza”. Evidentemente, en el contexto de la controversia que nos ocupa, quien inició e impulsó el proceso disciplinario que se llevó a cabo respecto a la conducta del juez Candelaria Rosa lo fue el panel de jueces del Tribunal de Apelaciones. Esto, independientemente del curso que siguió ese requerimiento inicial.
En este caso, los jueces trajeron ante la atención de esta Curia la alegada conducta antiética del magistrado y, asimismo, este Tribunal la refirió a la OAT conforme está establecido en las Reglas de Disciplina Judicial. Independientemente de que al final quien sometió el asunto a investigación fue el otrora Juez Presidente Señor Hernández Denton, ello no implica que quienes promovieron ese asunto fueron los distinguidos jueces del panel Tribunal de Apelaciones.
Por otra parte, nótese que el Canon 7, supra, exige a los jueces promover y cooperar en asuntos disciplinarios contra otros jueces cuando les conste personalmente que se hayan cometido actos antiéticos o ilegales. El diccionario de la Real Academia Española define cooperar como “obrar juntamente con otro u otros para un mismo fin”.(7) Difícilmente podrá un juez o una jueza cumplir con este deber si luego de que refiere el asunto no se le informa el curso que siguió el proceso disciplinario. ¿Qué sentido tiene que se les exija a los jueces y las juezas con conocimiento personal de actos antiéticos que cooperen en el esfuerzo de erradicar conductas que laceren la integridad del sistema de justicia si luego se les excluye de las instancias del procedimiento disciplinario? ¿Cómo habrán de hacerlo? ¿Cómo podrán refutar una deter *911 minación que a su entender sea contraria a lo que vio o escuchó? ¿Cómo podrá realizarse una investigación completa?
Al reflexionar sobre estas interrogantes, sin lugar a dudas, debemos concluir que todo juez o toda jueza que conforme a los postulados del Canon 7, supra, solicite que se investigue cierta conducta de otro magistrado u otra magistrada, debe considerarse parte promovente del proceso disciplinario que posteriormente se ventile contra este último o esta última. Al ser así, se es acreedor o acreedora de todos los derechos que las Reglas de Disciplina Judicial consignan respecto a la parte promovente, por ejemplo, la notificación de todos los trámites procesales y el poder solicitar que se revise la decisión de archivar una queja. Lo contrario atentaría vehementemente contra la esencia misma de los procesos disciplinarios y de los propios Cánones de Ética Judicial. Esto, en cuanto dichos cánones exigen a los jueces y a las juezas promover y cooperar en procedimientos disciplinarios cuando tienen conocimiento personal de hechos que ameriten investigar a un compañero o a una compañera juez.
Por las razones que anteceden, estoy conforme con la determinación a la que hoy arriba nuestro Tribunal.

 Es un principio básico y elemental que cuando este Tribunal ejerce los poderes cuasilegislativos que la Constitución de Puerto Rico le delegó expresamente para reglamentar los asuntos de la Rama Judicial, no es necesaria la existencia de un caso y controversia.

 Véase Comparecencia especial en cumplimiento de orden, Anejo 4.

 La Regla 7(b) de Disciplina Judicial establece lo siguiente:
“La Oficina de Asuntos Legales o la persona designada por la Directora o el Director realizará una investigación de la queja y rendirá a la Directora o al Director un informe de investigación, dentro de un término de ciento veinte (120) días, a *885 partir de la notificación de la queja a la jueza o al juez promovido conforme a la Regla 6(c) de este apéndice. Este término podrá ser ampliado por la Directora o el Director por justa causa”. 4 LPRAAp. IV-B.
En su comparecencia a este Tribunal, la Directora Administrativa de los Tribunales no incluyó documentación alguna que demostrara cuándo en efecto se le notificó al juez Candelaria Rosa la Queja presentada en su contra ni en cuántas ocasiones amplió el término para que la Oficina de Asuntos Legales rindiera su Informe de Investigación.

 Véase Comparecencia especial en cumplimiento de orden, Anejo 1. Debemos enfatizar que el mero hecho de que sea la primera vez que un miembro de la Judicatura incurra en actos que violen los Cánones de Ética Judicial no necesariamente es óbice para ordenar el archivo de una Queja.

 íd.

 íd.

 íd., pág. 1.

 Para una discusión histórica detallada en cuanto al desarrollo de nuestro poder para disciplinar a los jueces de tribunales inferiores y los procedimientos que culminaron en la aprobación de las Reglas de Disciplina Judicial, véase In re Cancio González, 190 DPR 290 (2014).

 Comparecencia especial en cumplimiento de orden, pág. 3.

 En el escolio 14 del Voto particular disidente de la Jueza Presidenta Señora Fiol Matta, esta discrepa en cuanto a que el peticionario y los Jueces de Apelaciones hayan participado “activamente” de la Queja de epígrafe, porque no fue hasta septiembre de 2014 que uno de ellos envió una misiva a la Jueza Presidenta. Cabe preguntarse cómo la Jueza Presidenta pretende que ellos promovieran el proceso disciplinario si ni siquiera se habían enterado que la Queja había sido archivada por la Directora Administrativa de los Tribunales.

 In re Aprobación Cánones Ética 2005, 164 DPR 403, 417 (2005).

 In re Aprobación Cánones Ética 2005, supra.

 íd., pág. 405.

 íd.

 íd., pág. 417. El contenido de ese Canon 7 correspondió a las normas del Canon 3D(1) y (2) del Código Modelo de Conducta Judicial promulgado por la American Bar Association, que disponía como sigue:

“D. Disciplinary Responsibilities.

(1) A judge who receives information indicating a substantial likelihood that another judge has committed a violation of this Code should take appropriate action. A judge having knowledge that another judge has committed a violation of this Code that raises a substantial question as to the other judge’s fitness for office shall inform the appropriate authority.
(2) A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct should take appropriate action. A judge having knowledge that a lawyer has committed a viola *908 tion of the Rules of Professional Conduct that raises a substantial question as to the lawyer’s honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate authority”.
En los comentarios al Código Modelo de Conducta Judicial se mencionó que la acción en respuesta al conocimiento de que un juez o abogado incurrió en conducta antiética podía incluir una acción directa o reportar la conducta a la autoridad o agencia competente.

 íd., págs. 417-418.

 En: http://lema.rae.es/drae/?val=cooperar (última visita, 15 de octubre de 2014).